UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CR-00015-R

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.

RODNEY EDWARD MOORE, et. al.                                                       DEFENDANTS

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court upon Defendant Rodney Edward Moore's Motion to Suppress Evidence (DN 440). A suppression hearing was held on September 30, 2010, in Paducah, Kentucky. Appearing for the United States was Larry Fentress, AUSA, and for Defendant was Brian S. Katz. Terri Turner, official court reporter, recorded the proceedings. Both the United States and Defendant submitted briefs supporting their position on this Motion to Suppress (DN 531, 533). The matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is DENIED.

**BACKGROUND**

On June 30, 2009, agents from the Drug Enforcement Administration (DEA) and local law enforcement officers executed a federal search warrant on four different residences, including 211 Hillside Terrace in Hopkinsville, Kentucky. During the search of that particular residence, agents discovered and seized a quantity of marijuana, cocaine, crack cocaine, a variety of drug paraphernalia, and a firearm. Defendant was also arrested at the residence. The United States submits that Defendant made a number of incriminating statements during the course of his arrest.

Special Agent Darren Atkins of the DEA petitioned for the search warrant. In the detailed affidavit in support of the search warrant, Atkins provided the following facts. Atkins received much of the information in the affidavit from a confidential informant (CS-1) and three sources of information (SO-1, SO-2, and SO-3). These individuals detailed a wide-ranging conspiracy to sell illegal drugs in Hopkinsville led primarily by Donald Williams. Defendant was named as a member of Williams's alleged drug organization, however Atkins's affidavit indicated that only CS-1 offered information regarding Defendant and his residence at 211 Hillside Terrace. According to the affidavit, CS-1 specifically revealed the following about Defendant:

- Generally, CS-1 identified Defendant as a member of Williams's alleged drug conspiracy, working as a "crack cook."

- On May 15, 2008, CS-1 went to Defendant's apartment to make a controlled purchase of cocaine. At that time, Defendant did not live at 211 Hillside Terrace. CS-1 told Atkins that Defendant was present at the apartment while crack cocaine was being "cooked." CS-1 also stated that while waiting at Defendant's apartment, Williams arrived and took money and a quantity of crack cocaine from Defendant.

- In March of 2009, CS-1 revealed to Atkins that Williams and Defendant had experienced a falling out over a gambling debt and as a result, Williams could not find someone to "cook" his crack cocaine.

- In April of 2009, CS-1 observed Defendant retrieve two bags of money from the kitchen of 211 Hillside Terrace and then give them to an associate of Williams. The associate then told CS-1 that the bags contained between fifty and sixty thousand dollars.

- In May of 2009, Defendant spoke with CS-1 at a local barber shop, stating that he did not sell drugs but that he did "cook" crack for a number of area drug dealers.

- In June of 2009, CS-1 and Atkins drove by 211 Hillside Terrace where CS-1 identified three automobiles, which belonged to Defendant. Atkins then verified this information by checking Kentucky CourtNet, discovering that Defendant had received a citation under one of these automobiles. On the citation, Defendant listed his address as 211 Hillside Terrace.

Besides these incidents involving Defendant and his residence, the affidavit lays out five other controlled purchases by CS-1 of crack cocaine from various individuals. Finally, Atkins also details information arising out of wire intercepts between October of 2008 and February of 2009 that allegedly implicate Williams and number of his associates as detailed by CS-1.

In describing his/her reliability, Atkins set forth that CS-1 agreed to cooperate in the investigation for consideration by the United States Attorney Office and in exchange for financial compensation. He also affirmed that over a two-year relationship, the information from CS-1 was "correct, truthful, and accurate."

Defendant now moves the Court to exclude the evidence discovered during the search of 211 Hillside Terrace and the incriminating statements made during his arrest. As a basis for this Motion to Suppress, Defendant argues that Atkins's affidavit fails to properly establish the reliability of CS-1. Additionally, Defendant claims that CS-1's information relating to Defendant's residence at 211 Hillside Terrace was stale at the time of the warrant's issuance.

## STANDARD

The Fourth Amendment prohibits a warrant to be issued without probable cause. U.S. Const. amend. IV. "To establish probable cause adequate to justify issuance of a search warrant, the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (quoting *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009)). Great deference should be afforded the magistrate judge's determination of probable cause. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). The Supreme Court has "stressed that a hypertechnical critique of warrants would only, in the end, encourage warrantless searches, undermining the very Fourth

Amendment right such an approach would seek to protect." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 236-46 (1983). For that reason, "[t]his circuit has long held that an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." *Id.*

## ANALYSIS

### I. Atkins's affidavit properly establishes the reliability of CS-1.

When reviewing the affidavit for a search warrant where the affidavit is premised in part on information garnered from a confidential informant, this circuit requires that the "affidavit must state facts supporting an independent judicial determination that the informant is reliable." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005). This Court reviews the informant's reliability looking at the totality of the circumstances and the affidavit as a whole. *Id*. "[W]hile the affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form." *Id.* (citing *Allen*, 211 F.3d at 975-76). Facts showing an informant's reliability include (1) whether the police corroborate parts of the informant's story, (2) whether the affidavit provides an in-depth description of the informant's first-hand knowledge, and (3) whether the informant reveals their identity to the reviewing judge. *Id.*

This circuit has frequently reviewed the adequacy of affidavits based on disclosures by confidential informants. In *United States v. Pelham*, an affidavit containing the name of the informant and recounting the informant's personal observation of illegal drugs being stored and sold on a certain premises was sufficient for the judge's probable cause determination. *United States v. Pelham*, 801 F.2d 875, 875-78 (6th Cir. 1986); *see Allen*, 211 F.3d at 973. In *United States v. Williams*, the affiant stated that "a confidential and reliable informant, who [had] given information in the past that [had] lead to arrests and convictions," had observed drugs in a

residence in the past 72 hours. *United States v. Williams*, 224 F.3d 530, 531 (6th Cir. 2000). While the district court initially determined that the affidavit was insufficient, the Sixth Circuit Court of Appeals determined that this was not a "bare bones" affidavit. *Id*. at 533. The court went on to describe a "bare bones" affidavit as "one which states 'only the affiant's belief that probable cause existed.'" *Id*. (quoting *United States v. Finch*, 998 F.2d 349, 353 (6th Cir. 1993)). CS-1's numerous controlled purchases and the depth of his/her cooperation with Atkins and other DEA agents are substantially demonstrative of his/her reliability. This extensive resume of work with authorities provided just some of the detail from which the magistrate judge could determine the reliability of the informant. CS-1's information on the drug conspiracy was corroborated through police investigations such as wiretaps. Atkins also affirmed that he had a two-year relationship with CS-1 and that the information provided was "correct, truthful, and reliable." In *Allen*, this circuit decided that the affidavit was sufficient where an affiant provided "information about individuals involved in criminal activity in the past that [had] proven to be reliable." *Allen*, 211 F.3d at 971. The court of appeals made a similar finding in *Williams* where the affidavit read that the informant was "reliable" and "had given information in the past that [had] lead to arrests and convictions." *Williams*, 224 F.3d at 531. As such, Atkins's assertion about the accuracy and truthfulness of CS-1 was an appropriate basis for the magistrate judge's determination that the he/she was reliable.

Defendant complains that the background information on CS-1 set forth in the affidavit is insufficient for the magistrate judge to have reviewed his/her reliability. However, given the level of cooperation of CS-1 and Atkins's unambiguous statements in the affidavit, this objection is unfounded. Moreover, this circuit has consistently found that "an affidavit can pass muster without stating both that the informant gave his or her name and that the informant provided

reliable information in the past." *McCraven*, 401 F.3d at 698. Defendant takes further issue that the police failed to corroborate a number of the statements CS-1 made during the course of the DEA's investigation. Yet, this circuit has addressed Defendant's concerns, stating that "[a] requirement that information from [an informant] should invariably have to be personally corroborated by further police investigation would aid lawbreakers." *Allen*, 211 F.3d at 976. Consequently, "independent corroboration of an informant's story is not necessary to a determination of probable cause." *McCraven*, 401 F.3d at 698. Therefore, this objection by Defendant is also improper.

> **II. The information included in Atkins's affidavit was not stale when the search warrant was issued.**

As determining probable cause for a warrant depends heavily on the existing conditions of the location to be searched, "there arises the 'unique problem of whether the probable cause which once existed has grown stale.'" *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (citation omitted). "[W]hether information contained in an affidavit is stale 'must be determined by the circumstances of each case.'" *Id*. (quoting *Sgro v. United States*, 287 U.S. 206, 210-11 (1932)). When judging the circumstances of each case, "the length of time between the events listed in the affidavit and the application for the warrant, while clearly salient, is not controlling." *Id*. The question of staleness depends instead on the "inherent nature of the crime." *Id*. (quoting *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). When reviewing the inherent nature of the crime, courts should examine a number of variables, including "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?), etc." *Id*. (quoting *Andresen v. State*, 331 A.2d 78,

106 (Md. Ct. Spec. App. 1975)). Finally, older information provided in a probable cause determination that may have grown stale may be "refreshed" if "recent information corroborates otherwise stale information." *Spikes*, 158 F.3d at 924.

In his motion, Defendant notes that between May 15, 2008 and April of 2009, Defendant was not implicated in any criminal activity by CS-1 in Atkins's affidavit. Defendant also argues that his alleged actions in April and May of 2009 were insufficient to refresh the probable cause that may have arisen from his past interactions with CS-1. He cites no authority for this proposition.

"Even if a significant period has elapsed since a defendant's last reported criminal activity, it is still possible that, depending on the nature of the crime, a magistrate may properly infer that evidence of wrongdoing is still to be found on the premises." *Id*. at 923. An operation to grow marijuana has been termed "long term" and thus allowed for a greater lapse of time from the incidents in the affidavit and the issuance of the search warrant. *See United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991). Other courts have also held that where the affidavit recounts continuous and ongoing criminal activity, the amount of elapsed time between the affidavit and the petitioning for the search warrant is less significant. *See United States v. Craig*, 861 F.2d 818, 822 (5th Cir. 1988) (stating that if "the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and the issuance of the warrant, the information need not be regarded as stale"); *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972) (stating that when "the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant"). In this case, the affidavit describes a far reaching drug conspiracy, details numerous controlled purchases of crack cocaine, and is

supported by wire intercepts and police surveillance.  CS-1 indicated that Defendant was intricately involved in this drug conspiracy, preparing crack cocaine in his residence and storing large amounts of money for the drug organization.  Given the length of the investigation and the protracted criminal conspiracy outlined, this Court believes that the activity occurring in 211 Hillside Terrace can be termed "long term."  Consequently, the evidence provided in the affidavit was not stale.

This Court also believes that the criminal activity CS-1 witnessed in April and May of 2009 properly refreshed the probable cause to search 211 Hillside Terrace.  Defendant admitted to CS-1 the month before the search warrant was executed that he was involved in the preparation of crack cocaine, and two months prior, CS-1 saw Defendant give an associate of Williams between fifty and sixty thousand dollars from within his residence.  Such information outlined in the affidavit was illustrative of Defendant's connection to the drug conspiracy surrounding Williams and indicated that both drug preparation was occurring and the fruits of drug sales were being stored in Defendant's residence.  This evidence refreshed CS-1's previous statements that crack was being "cooked" in Defendant's old apartment, that Defendant "cooked crack" for Williams' drug organization, and that Defendant stored money in his apartment that was earned from the sale of illegal drugs.

Since Atkins's affidavit contained information showing a continuous and ongoing criminal conspiracy and because the evidence of April and May of 2009 refreshed the probable cause supplied by the previous criminal activity of Defendant, the information detailed in the affidavit was not stale when the warrant was issued.

> **III. Even if the affidavit was insufficient, the law enforcement agents who executed the warrant relied in good faith on the magistrate judge's probable cause determination.**

In *United States v. Leon*, the Supreme Court decided that excluding evidence from a criminal trial was inappropriate where it was seized "in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984). There are four generally accepted exceptions to *Leon*'s rule where objective reliance by the officer on a warrant is unreasonable. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). These exceptions are "(1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid." *Id*. The pertinent inquiry for this Court is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *McCraven*, 401 F.3d at 698.

Defendant relies upon the third and fourth exceptions of *Leon*. For these exceptions[1], evidence should only exclude "when the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Washington*, 380 F.3d 236, 241-42 (6th Cir. 2004) (quoting *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004)). In reviewing this exception under *Leon*, this circuit has upheld warrants predicated on deficient affidavits where there was "some modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched." *Laughton*, 409 F.3d at 749. Upon review of the warrant, the attached affidavit, and the relevant precedent of this

---

[1] This circuit analyzes the final two exceptions in *Leon* as a single exception. *See United States v. Rodriguez-Suazo*, 346 F.3d 637, 645 (6th Cir. 2003); *United States v. Chapman*, No. 1:08-CR-42, 2009 WL 301906, at *14 (E.D. Tenn. Feb. 6, 2009); *United States v. Feagan*, No. 1:07-CR-96, 2008 WL 4239766, at *9 (E.D. Tenn. July 1, 2008).

circuit, it is clear that the *Leon* exceptions are inapplicable. An officer reviewing the warrant would have seen that Defendant was involved with Williams's drug conspiracy, actively participated in making crack cocaine, and had stored large quantities of cash derived from the sale of drugs in his residence at 211 Hillside Terrace. Moreover, Atkins confirmed Defendant's residence from a traffic citation before the warrant was issued. Judging by the lengthy description of these criminal activities and Atkins's assertion that CS-1 was a reliable and trustworthy source, a law enforcement officer would reasonably believe that the warrant was supported by probable cause.

Defendant argues that the exception applies because law enforcement officers did not independently investigate CS-1's statements and the information relating to Defendant was outdated. Whether these arguments are true is irrelevant considering that the warrant sufficiently linked drug activity to 211 Hillside Terrace, the residence occupied by Defendant. The only pertinent question is whether a reasonable law enforcement officer could reasonably believe the warrant was supported by probable cause, something already answered in the affirmative.

For these reasons, even if the warrant was not supported by probable cause, the officers executing it relied in good faith on the magistrate judge's determination.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Suppress Evidence is DENIED.