# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:09-CR-00015-R

**UNITED STATES OF AMERICA**                                                         **PLAINTIFF**

**v.**

**RODNEY EDWARD MOORE, et al.**                                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Rodney Edward Moore's Motion for Judgment of Acquittal or For a New Trial (DN 633). Plaintiff has responded (DN 640) and Defendant has replied (DN 643). Defendant has also supplied a supplemental memorandum in support of his motion (DN 636). This motion is now ripe for adjudication. For the reasons that follow, Defendant's Motion is DENIED.

## BACKGROUND

Defendant Rodney Edward Moore was arrested following a lengthy investigation by the Drug Enforcement Administration (DEA) and local law enforcement officers into the sale of crack cocaine in Hopkinsville, Kentucky. On January 18, 2001, following a six-day trial, a jury found him, along with two other defendants, guilty of conspiracy to possess and distribute fifty grams or more of crack cocaine (violation of 21 U.S.C. §§ 841(b)(1)(A), 846). During the trial, evidence from a variety of sources was presented against Moore in support of the conspiracy charge. This included testimony from a number of his accomplices, drugs and drug paraphernalia seized in a search of his apartment by law enforcement, and testimony from Special Agent Darren Atkins from the DEA.

1

Moore now moves, through counsel, for a judgment of acquittal or for a new trial.[1] As the basis for his acquittal, Moore first claims that no reasonable jury could have concluded that the Government met its burden of proof at trial. Alternatively, Moore says that the Government failed to comply with the Jencks Act and therefore a new trial should be ordered. Also, in his supplemental memorandum, Moore asserts that during his cross examination, Atkins testified about a confidential source employed by the DEA during their investigation, Missy Jackson. Moore offers that under questioning from defense counsel, Atkins said that Jackson had revealed that Moore "cooked" crack for the charged conspiracy. He now claims that such testimony was in violation of his Sixth Amendment rights under the Confrontation Clause, and therefore grounds for reversal of his conviction.

## ANALYSIS

### I. Judgment of Acquittal

On the defendant's motion, even after a guilty verdict by the jury, a court may enter an order of acquittal "if the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a), (c). "A defendant making such a challenge bears a very heavy burden." *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000). In examining the proof presented at trial, the court "must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). The court must refrain

---

[1] This motion was made and responded to without the aid of a trial transcript, which was unavailable so soon after the trial. The Court has however had the benefit of reviewing the transcripts in deciding the instant motion.

from considering witness credibility, weighing the evidence, or substituting its own judgment for that of the jury. *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002)).

In short, the evidence arrayed against Moore at trial was overwhelming and convincing. No fewer than seven witnesses provided direct testimony about Moore's involvement in the conspiracy and the trafficking of drugs in and around Hopkinsville. Government witness Demetrius Williams said at trial that Moore cooked approximately twenty kilograms of cocaine into crack. He also testified that he provided this cocaine to Moore on credit, deferring payment until the crack could later be sold. Lartavious Banks and Ronnie Whaley, also Government witnesses, confirmed much of Williams's testimony. They claimed to have either delivered cocaine to Moore's residence to be converted into crack or witnessed Moore actually cooking the cocaine. Finally, law enforcement officers offered into evidence both powder and crack cocaine seized from Moore residence during the investigation. These officers further provided Moore's own statements to them that the narcotics seized from his apartment were his, and that he indeed cooked cocaine into crack.

Applying the rigorous standard of Rule 29 to the instant matter, it is clear that this motion is improper. For a conviction under section 846 of the federal criminal code, the Government must prove the existence of a drug conspiracy and that the defendant participated in the conspiracy. Any number of items from the above-described evidence could have persuaded the jury as to Moore's guilt. While Moore is correct that there were several inconsistencies in the testimony offered, the vast majority of the evidence against him supported the jury's final conclusion: that he was involved in criminal conspiracy to distribute large quantities of crack

cocaine. As the Court finds that there was sufficient evidence for a reasonable trier of fact to return a conviction against Moore, this motion is DENIED.

## **II. New Trial**

Moore next argues that he is entitled to a new trial on two separate bases under Federal Rule of Criminal Procedure 33. *See* Fed. R. Crim. P. 33(a). He first sets out allegations that the Government failed to comply with the requirements of the Jencks Act and provide him with certain statements made to Atkins prior to trial. Moore also contends that testimony offered by Atkins on his cross examination concerning statements made by confidential informant Missy Jackson violated his Sixth Amendment rights. The Court will address each in turn.

### a. Jencks Act

With regard to the Jencks Act, Moore specifically charges the following violations. He declares that during Atkins's cross examination, he "offered testimony as to what [Jackson] told him about Moore's alleged involvement in the conspiracy." DN 633 at 2. Moore insists that by virtue of this testimony, the Government was required to produce any statements or reports that had memorialized Jackson's discussions of Moore and his activities. Moore further cites issues with Government witness Ronnie Whaley. He claims that before trial, Whaley made a proffer to Atkins, in which he claimed that he did not know for whom Moore was cooking crack. At trial however, Whaley offered somewhat different testimony, saying that he presumed that Moore was cooking cocaine into crack for Demetrius Williams, the ringleader of the criminal conspiracy. In this motion, Moore argues that the contradictory proffer statement should have been disclosed after Whaley testified.

Government counters that Moore's objections are without merit. It says that Jackson's statements elicited from Atkins were on his cross examination and therefore not implicated by the Jencks Act. Even ignoring this, the Government advances that the statements by Jackson were in fact disclosed to defendants well before the trial. Regarding Whaley's pretrial statements, the Government argues that Atkins did not testify about the proffer and that the notes he took during his interview with Whaley were never shown to or adopted by the witness. Consequently, the Government claims that "for Jencks purposes, therefore, it was not a statement by Whaley, but by Atkins" and since he "did not testify about it during his direct testimony, the Jencks Act did not apply." DN 640 at 4. It also avers that Whaley's statements were not exculpatory, as they did not deny Moore's involvement in the overall conspiracy.

"The purpose of the Jencks Act itself was to restrict a defendant's right to any general exploration of the government's files." *United States v. Nickell*, 552 F.2d 684, 688 (6th Cir. 1977). Section 3500(b) of the Jencks Act lays out the following obligations for the Government in a criminal matter:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500(b). A "statement" under the Jencks Act is defined as follows:

> The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means --
> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral

5

> statement made by said witness and recorded contemporaneously with the making of such oral statement; or
> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

*Id*. § 3500(e)(1)-(3).

In addressing Jackson's statements, the Court concludes that Government did not violate its obligations under the Jencks Act. It stated unambiguously in its response to this motion that these materials were disclosed before trial, albeit absent Jackson's identity. Moore's reply did not refute this contention; consequently, the Court assumes that this is an accurate characterization of the facts, and this portion of Moore's motion is therefore flawed. Regarding the objections surrounding Whaley, the Court finds that the materials that Moore is requesting do not fall under the definition of "statement" as provided for in the Jencks Act. *See id*. As both subsection (2) and (3) of section 3500(e) are inapplicable to this matter, Atkins's notes of the Whaley interview are only impacted by the Jencks Act if they were "adopted or approved by [Whaley]." *Id*. § 3500(e)(1). Under the adoption test, "a government report or notes of a witness' statement must be produced 'if the notes from the interview were read back to and verified by the witness and if the report summarized the notes without material variation.'" *United States v. Howard*, 150 F. App'x 476, 480 (6th Cir. 2005) (quoting *United States v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993). Government has expressly denied that Whaley was ever shown or read the notes from his interview; nor did Atkins testify about the proffer session in his direct testimony. Since Moore does not provide a divergent narrative in his reply, the Court is inclined to accept the Government's version of events. Ergo, these notes cannot be a statement subject to disclosure under these statutory provisions.

Assuming that the Government was obligated to produce these items, the Court believes that such non-disclosure is harmless error. The rules of criminal procedure say that any harmless error "that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). In *United States v. Susskind*, 4 F.3d 1400 (6th Cir. 1993), this circuit set out the pertinent framework in examining a trial court's mistakes in imposing the Jencks Act's requirements:

> Mistakes in the application of the Jencks Act are unquestionably subject to harmless error analysis, although courts must not speculate on whether Jencks Act statements could have been used effectively at trial and the harmless-error doctrine must be strictly applied in Jencks Act cases. Whether an error committed at trial is harmless depends on whether the error is one that might reasonably be thought to have had substantial and injurious effect or influence in determining the jury verdict. The strength of the evidence of guilt can be an important factor in this calculus. Because the Jencks Act is not constitutionally required, finally, a court need not find a Jencks Act error harmless beyond a reasonable doubt in order to uphold a conviction.

*Id.* at 1406 (internal citations and quotation marks omitted). Accepting Moore's arguments momentarily, the Court believes that the strength of the Government's evidence was simply too great to be impacted by the disclosure of these items. Candid testimony from a number of different witnesses established his connection to the criminal conspiracy. This evidence was further corroborated by the narcotics seized in his apartment and his own inculpatory statements to law enforcement officers. If there were violations of the Jencks Act, of which this Court is highly dubious, the items discussed in Moore's motion would not have changed the outcome of his trial.

### b. Confrontation Clause

Moore also asserts that since his Sixth Amendment rights under the Confrontation Clause were violated, the Court should grant a new trial under Rule 33. In his motion, Moore recounts that during Atkins's cross examination by counsel for defendant Lamont Dunbar, he testified

about statements Jackson made to him concerning Moore's conspiratorial activities. The testimony to which Moore has alluded is as follows:

> Question by Counsel for co-defendant Lamonte Dunbar: Sir, if I may, I want to follow up on a few questions, and you forgive me. I'm going to kind of go in reverse order here. That way I can kind of remember a little better.
>     Did you just testify that Missy Jackson gave no information on these three defendants that they were dealing in crack? Did you just testify to that?
> Answer by Agent Atkins: No, sir, I don't believe I did.
> Q: What did you testify to? What did she tell you about these three defendants? I thought you said she gave no information that she could buy from these three defendants or knew of their crack dealing.
> A: I said buy from those defendants as part of your -- what you just read.
> Q: Okay.
> A: I never said, that I'm aware of, that I remember that she didn't provide information about them involved in crack.
> Q: Okay.
> A. But the question as I understood it was if she said she could ever buy from them, and the answer to that is no.
> Q: Fair enough. Okay. What did she tell you about these defendants?
> A: As far as their drug activity?
> Q: Uh-huh.
> A. She stated that Rodney Moore was a crack cook for several organizations, that he was a crack cook for Demetrius Williams. She stated that she had been around him before when drugs were present. There was one part in the investigation she reported --
> Q: When did she make that statement?
> A: I'm sorry?
> Q: When did she make that statement?
> A: It would have been several times throughout the investigation. That would -- I don't know of a date or particular time, but his name was mentioned more than once throughout the investigation. There was -- to finish answering your question, there was specific information that she relayed to Moore -- or to me about Moore. She was present when Rodney Moore and Demetrius Williams they gambled together and that they were very flippant with their money and they made a thousand --
> . . .
> A: -- with their money. And there was a specific example where she said that Rodney Moore and Demetrius Williams were together, social setting, they made a bet, a $1,000 bet, about one of their cell phones, if the cell phone could withstand a certain amount of abuse. And they put that phone under a car tire, ran over it, and it broke the phone.
>     And according to the CI, that strained the relationship between Mr. Moore and Mr. Williams because one of them had to pay the other one $1,000. And after

8

>
> that, Mr. Williams didn't have a crack cook for a while. So there was a little difficulty in getting cocaine because of the strained relationship. She reported that to me . . . .

DN 663 at 21-23. During his own cross examination, Moore's counsel questioned Atkins at length about Jackson's statements, claiming that the prior testimony required him to "try and discredit [Jackson] claim's that Moore was the crack cook for the organization." DN 636 at 2. In this motion, Moore admits that he did not offer a timely objection at trial to Atkins's statements about Jackson; still, he states that this initial dialogue between Atkins and co-defendant Dunbar's counsel was violative of Moore's constitutional rights. Government responds that Atkins's statements could not implicate the Confrontation Clause, since they were not used for hearsay purposes.

The Confrontation Clause mandates that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Sixth Circuit has set out the following description of a criminal defendant's protections under the clause when confidential informants fail to testify:

> Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. This court has held that statements of a confidential informant are testimonial in nature and therefore may not be offered by the government to establish the guilt of an accused absent an opportunity for the accused to cross-examine the informant. The admission of a testimonial statement, however, does not necessarily trigger a violation of the Confrontation Clause. To do so, the statement must be used as hearsay-in other words, it must be offered for the truth of the matter asserted. We must thus determine (1) whether [the informant's] statement was testimonial in nature, and (2) whether it was offered to prove the truth of the matter asserted.

*United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007) (citations and quotation marks omitted).

While there is little question that Jackson's statements are testimonial in nature, they do not fall within the traditional definition of hearsay because they were not offered by Atkins "to prove the truth of the matter asserted." *See id*. In the testimony set out above, Atkins is prompted by defense counsel on cross examination to explain exactly what Jackson had told him about the three criminal defendants. Counsel appears to have been attacking the reliability of Jackson as a confidential informant, insinuating that she had not explicitly stated that Moore or the other defendants were involved in the charged drug conspiracy. Whatever his motivations, defense counsel's inquiry asked Atkins to specifically recount what Jackson had said about the defendants' drug activities. Thus, Atkins was not offering Jackson's previous narrative for the truth of the matter asserted; rather he offered the statements to demonstrate that she had *actually* given him information on these three defendants and their drug activity. Overall, Atkins was bolstering Jackson's credibility by refuting defense counsel's attacks, not trying to provide her statements as direct evidence against Moore and the other defendants. Since the statements were not offered for the truth of the matter asserted, they cannot be hearsay and do not implicate the protections of the Confrontation Clause.

Irrespective of this finding, and accepting Moore's position that the admission of this testimony was an error, the Court believes that it did not greatly impact the criminal proceeding. Where a statement is admitted at trial in violation of the Confrontation Clause and the defendant failed to object, the decision must be reviewed for plain error. *United States v. Warman*, 578 F.3d 320, 345 (6th Cir. 2009) (citations omitted). To succeed on plain error review, defendants must show the following: "(1) error, (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights,' and (4) that 'affected the fairness, integrity, or public reputation of the

judicial proceedings.'" *Id*. Again, the Court believes that the jury's decision was supported by ample evidence, and thus Moore cannot meet the third prong of this test. The Government's witnesses, Demetrius Williams, Lartavious Banks, Ronnie Whaley, Perry Redd, and Rayshawn Johnson, all testified about Moore's involvement with the sale, manufacture, and distribution of drugs during the conspiratorial period. Law enforcement also introduced the illicit contents of Moore's residence and his criminal statements. With such convincing evidence, it cannot be said that the exclusion of the targeted portion of Atkins's testimony would have altered the trial's outcome. *See id*. at 347 (even though violation of Confrontation Clause, given the largess of evidence against defendant, exclusion of the statements would not have affected the trial's result); *United States v. Jones*, 205 F. App'x 327, 342 (6th Cir. 2006) (same).

Accordingly, Moore's motion for a new trial under Rule 33 is improper.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion (DN 633) is DENIED.